```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
```

| | |
|---|---|
| STEPHANIE PENZA, | |
|     Plaintiff, | Civil No. 20-1778 (RMB) |
|     v. | **OPINION** |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
|     Defendant. | |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Stephanie Penza from a denial of social security disability benefits.

For the reasons set forth below, the Court affirms the decision of Administrative Law Judge ("ALJ") Paul R. Armstrong.

I.    **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co.

1

v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential

2

analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more

> hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201-02 (3d Cir. 2019).

## II. **FACTS**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff was 38 years old at the alleged onset date, and 42 years old at the date of the ALJ hearing. According to Plaintiff, she suffers from multiple, severe medical impairments. [Docket No. 15] These include major depressive disorder (MDD), generalized anxiety disorder, bipolar II disorder, and rule out borderline personality disorder. [Id.] She previously worked as a medical social worker and has a master's degree in social work. [Docket No. 13].

According to Plaintiff's treating psychiatrist, Ann Steel, M.D., Plaintiff's impairments cause her to suffer mood instability, inappropriate anger, difficulty concentrating, and impulse control. [Docket No. 15]. These conditions allegedly prevent Plaintiff from meeting workplace expectations, maintaining regular attendance, regularly working with others, performing at a consistent pace, and completing normal workdays and workweeks. [Id.].

4

## III. ALJ'S DETERMINATION

The ALJ found that Plaintiff was not disabled. Specifically, the ALJ's decision determined that Plaintiff met the insured status requirements of the Social Security Act, that she had not engaged in substantial gainful activity since October 16, 2015, and that she suffered from "severe impairments" of depression and anxiety. [Docket No. 12-2]. In addition, the ALJ found that Plaintiff was unable to perform any past relevant work. [Id.]. Nevertheless, the ALJ ultimately concluded that Plaintiff's impairments did not meet or medically equal the criteria of any impairment in the Listings, 20 C.F.R. Part 404.1520(d), 404.1525, and 404.1526, and that she retained the "residual functional capacity" to perform many jobs in the national economy. [Id.].

## IV. ANALYSIS

Plaintiff contends that the ALJ failed to comply with Social Security Ruling (SSR) 85-15 when assessing Plaintiff's residual functional capacity. [Docket No. 15]. More specifically, Plaintiff argues that the ALJ did not consider "the impact of stress of Plaintiff's ability to perform the mental demands of work." [Id.]. In response, the Commissioner argues that the ALJ accounted for Plaintiff's stress complaints, and found that the complaints "were largely situational, and related to her lifestyle stressors." [Docket No. 16].

Plaintiff's argument, as reflected in her Local Rule 9.1(d) Statement [Docket No. 13], relies on the opinions of her treating psychiatrist and clinical psychologist. Those physicians found that Plaintiff has significant difficulties in dealing with work stress, which significantly impairs her ability to work. [See Docket No. 15]. The Court disagrees. The ALJ's decision to disregard these conclusions was no oversight. The ALJ "granted little weight" to the opinions of Plaintiff's treating physicians for two reasons. [Docket No. 12-2, at 19]. First, the ALJ concluded that their "opinions are contradicted by evidence the claimant showed improvement in her mood, concentration, and memory when keeping up with treatment." [Id.]. Second, the physicians purportedly did not "address evidence the claimant was not keeping up with treatment or taking medication long enough to given treatment a chance to work." [Id.].

An ALJ has "the statutory authority to choose whom to credit when witnesses give conflicting testimony" but "the ALJ 'cannot reject evidence for no reason or the wrong reason.'" Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting Cotter v. Harris, 642 F.2d 700, 707 (3d Cir.1981)). "While the ALJ is . . . not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been

accepted and why other evidence has been rejected." Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983).

Here, the Court is satisfied that the ALJ has met these requirements. The ALJ spent ample time discussing why Plaintiff's physicians' reports should be partially discredited given the contradicting evidence. Most importantly, the ALJ concluded that the physicians' opinions should be afforded little weight because each opinion failed to address "evidence the claimant was not keeping up with treatment or taking medication long enough to give treatment a chance to work." [Docket No. 12-2, at 19]. To this point, the ALJ identified evidence that Plaintiff's condition improved when keeping up with medication, and that there was evidence in the record showing that the "intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Id. at 18].

The ALJ fully explained why he accepted and rejected various pieces of evidence, and he adequately weighed the physicians' conclusions against other evidence. See Kent, 710 F.2d at 115 n.5. When the ALJ discredited a physician's recommendation or conclusion, he did so only after identifying specific deficiencies and contradicting evidence. [See e.g., Docket No. 12-2, at 18] ["Also, contrary to testimony during the hearing, the claimant showed intact memory and concentration

7

during her consultative examination . . . . Moreover, there was evidence in the record the claimant was not keeping up with medical treatment."].

The ALJ also conducted an appropriate, particularized analysis into Plaintiff's ability to meet different types and levels of job stresses. As an initial matter, Plaintiff's argument as to job stress largely relies on the findings and recommendations of Drs. Steel and Mintzer, which the ALJ partially discredited. In addition, the ALJ also noted both that Plaintiff did not consistently maintain her treatment plan and that her condition improved with treatment. [Id. at 17-19].

Finally, the ALJ satisfied the requirements of SSR 85-15. SSR 85-15 states, in part, that "[t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15. This requires the ALJ to recognize, when conducting a residual functional capacity assessment for a claimant with a non-exertional limitation, that "demands of work is highly individualized, [and] the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." Id.

Plaintiff challenges the ALJ's decision on the grounds that the ALJ's colloquy with the Vocational Expert did not meet this standard. But this is incorrect. The ALJ asked the Vocational

Expert several questions about unskilled jobs in the national economy, and whether any of the expert's identified jobs would be eliminated due to "difficulties in dealing with people," requiring a position with "no public contact work," or requiring a position with "no more than occasional contacts with supervisors and co-employees." [Docket No. 12-2, at 56]. The Vocational Expert replied that it would not. The ALJ then relied on this discussion in his Decision. [Id. at 20]. Given the impairments that Plaintiff alleged, the ALJ asked the Vocational Expert individualized questions that satisfy the requirements of SSR 85-15.

## V. **CONCLUSION**

For the forgoing reasons the Court will affirm the Commissioner's decision.

An appropriate Opinion accompanies this Order.

DATE: May 28, 2021          s/ Renée Marie Bumb
                            RENÉE MARIE BUMB
                            UNITED STATES DISTRICT JUDGE